WILLIAM PATTERSON *vs.* JOHN CROOKSHANKS.—*Dec.* 1848.

The act of 1833, ch. 224, authorising the county courts to extend the term of service of slaves for a term of years, in certain cases, and its supplement, the act of 1845, ch. 105, conferring the same power upon the several orphans courts of the State, give no jurisdiction, either to the county courts or the orphans courts, unless the master, mistress, or agent, resides in the county where the application is made.

The object of these acts, which are to be construed together, was to give to each of these courts concurrent jurisdiction over the subject matter, when the parties claiming, or their agents, reside within the limits of the county. Any other construction would conflict with the whole judicial system of the State.

The appellee applied to the orphans court of *Washington* county, under the act of 1845, to extend the term of service of the appellant, who, he alleged, was sold to him as a slave for a term of years, to expire on the 1st of January 1844, and, in support of his title, offered a bill of sale for such term, manumitting the appellant thereafter, which was not recorded. HELD:

That the appellee having treated the appellant as a freeman in the court below, he could not, upon an appeal to this court, turn round and impeach the instrument of his own title, on the ground of its defective execution and want of record, and thereby make the appellant a slave, in order to deprive him of a legal standing in the appellate court.

APPEAL from the Orphans court of *Washington* county.

On the 24th of October 1848, the appellee filed a petition in the Orphans court of *Washington* county, stating, that in 1832, a certain *Joseph R. Ford,* of *Baltimore* county, sold to petitioner a servant, named *William,* for a term of years, to commence on the day of sale, and end on the 1st day of January 1844. That petitioner had said *William* in his possession until the 12th of September 1838, when he absconded, and has been gone since, whereby he has lost his services for the time intervening between the said 12th of September and the 1st of January, 1844. That said *William* was recently arrested as an absconding servant, and he now brings him into court to be dealt with according to law. That he is advised, your honors can extend the term of said *William,* so as to indemnify your petitioner for said loss of service.

The defendant, *William Patterson,* by his answer, denied the matters charged in the petition, and prayed the court to examine into the said charges, and that he might be dismissed with costs, &c.

In support of the petition, a bill of sale from *Joseph R. Ford,* of *Baltimore* county, conveying to *John Crookshanks,* of *Baltimore* county, for the sum of $200, a negro boy named *William,* aged about eighteen years, to serve until the 1st of January 1844, which also contains this covenant, "and the said *John Crookshanks,* for himself, his executors," &c., does hereby covenant, &c., to and with the said *Joseph R. Ford,* that from and after the said 1st of January 1844, the said negro boy *William* shall be liberated, manumitted and set free, and forever discharged from any and all kinds of slavery whatsoever. This bill of sale was dated 10th of February 1832, signed and sealed by said *Ford* and *Crookshanks,* and acknowledged before *Matthew Murray,* a justice of the peace for *Baltimore* city, but was not recorded.   There is also exhibited a power of attorney from *"John Crookshanks,* of *Baltimore* city," "authorising his son, ' *William F. Crookshanks,* of *said city,*' to file said application, and to sell said *William* for such term as the said Orphans court should direct," &c.   This power of attorney was also acknowledged before a justice of the peace for *said city.*

Testimony was then taken establishing the identity of the boy, *William Patterson,* the ownership of the appellee, and the fact of his leaving his said master on the 12th of *September* 1838, the value of his services, the kind treatment of his master, &c.; whereupon the said Orphans court, on the 31st of October 1848, acting under the acts of 1833, ch. 224, and 1845, ch. 105, "ordered, that the term of service of said *William Patterson,* (negro,) be extended for eight years from this date, and that the said *John Crookshanks* have the right of selling the said *William Patterson,* (negro,) in or out of the State of *Maryland.*"   From this order the defendant appealed to this court.

The cause was argued before SPENCE, MARTIN and FRICK, J.

By JOHN THOMPSON MASON for the appellant, and
By BOYLE for the appellee.

FRICK, J., delivered the opinion of this court.

In the petition filed in this cause, before the orphans court of *Washington* county, by *Crookshanks*, the appellee, it is alleged, that the negro *William Patterson*, the appellant, being bound by bill of sale to serve said *Crookshanks* for a term of years, before the expiration of said term, absconded from him, by which for a long space of time he lost the services of said negro; and that having recently arrested and recovered him, he had brought him before the orphans court of the county, that under the provisions of the act of 1845, ch. 108, he might have the term of service of said negro extended, so as to indemnify him for the loss sustained by his absconding.

The said negro *Patterson* appears by attorney in said court, and by his answer, denies the matters charged in the petition.

To prove the title to the service of the appellant, a bill of sale from *Joseph Ford* to *John Crookshanks*, both of *Baltimore* county, dated the 10th of February 1832, is produced, by which the said negro *William Patterson*, is sold to the said *Crookshanks*, for a term of years, to expire on the 1st of January 1844. And between them, it is further covenanted in the bill of sale, that at the expiration of that time, the said negro is to be liberated, manumitted and forever set free.

This bill of sale is acknowledged before *Matthew Murray*, a justice of the peace of the city of *Baltimore;* and as appears by the record, has never been recorded.

It further appears by a power of attorney, filed as part of the record, that the appellee constituted a certain *William Crookshanks* his agent and attorney, to file the petition in this cause; and both the appellee and his agent are therein described as residents of the city of *Baltimore*.

On the hearing of this petition and answer before the orphans court of *Washington* county, that court ordered the term of service of said negro to be extended for eight years ensuing, with discretion to the appellee to sell him for that period, in or out of the State of *Maryland*. And from this order, the said negro *Patterson,,* has appealed to this court.

The principal ground of appeal, and one which is, of itself, decisive of this case, is the objection, that the orphans court of *Washington* county, had no jurisdiction in the cause. By the act of 1845, ch. 105, the several orphans courts in the State are authorized, "upon application of any owners of any slaves, for a term of years, on proof that the slave is in the habit of running away, to extend the term of service of such slave, and give the owner a right to sell him in or out of the State, as effectually, and in the same manner, as the county courts now have, under the act, to which this is a supplement." The act of 1833, ch. 224, to which the above act is the supplement, in the 4th section declares, that "upon application of any master or mistress, or other person legally authorized by such master or mistress, to the county court of the county, where such *master, mistress or their agent may reside*, it shall be lawful for such court to grant an order for the sale," &c.

Construing the supplement in connection with the original act, it is apparent, that no jurisdiction is given, either to the county courts or the orphans courts, unless the master, mistress or agent resides in the county. The supplement standing alone is inoperative. The power there given is limited, and can only be used in reference to the original act. It is to be used in the same manner, and of course, only to the same extent, as it is applied in the county courts. As "effectually," and to the extent, that the county courts may use this power; to that limit, it is permitted to the orphans courts. This limitation is written on the face of the acts, which have for their object, to give to each of these courts, a concurrent jurisdiction over the subject matter, where the parties claiming, or their agent, reside within the limits of the county. Any other construction would conflict with the whole judicial system of the State; and in a class of cases of frequent occurrence, would give to every orphans court, an expansion of jurisdiction, only limited by the boundaries of the State. This cannot be intended or assumed, as the interpretation of these acts. The master, mistress, or agent, must reside in the county where the application is made; and the residence of neither master or agent, as this record indicates, being within *Washington*

county, the orphans court there, had no jurisdiction over the subject matter of this appeal, and therefore erred in assuming it.

But it is said this appeal is *coram non judice;* that the bill of sale from *Ford* to *Crookshanks*, providing for the freedom of the negro after January 1844, if intended to operate as a deed of manumission, is void, because it was not recorded according to law; and besides, was not acknowledged before a justice of the peace of the county, where the parties resided; they being described as of *Baltimore* county, while the magistrate purports to act in and for *Baltimore* city.

The instrument thus, for the purposes of this manumission, being a nullity, the negro remains a slave, and in that character, it is contended, he has no *status* in court.

But how does this allegation consist with the conduct and course of the appellee, in this proceeding? He first arraigns him before the court as a freeman, and then to drive him from his rights and his defence as such, he invokes the instrument of his title, and its defective execution, to convert him into a slave. In the court below, he attains the object of his petition by representing him to be free, and procures a sentence of prolonged servitude against him. In this court, where the negro resorts to the remedy open to him, alike with every freeman, his appeal is to be estopped by the alleged taint of slavery, and his consequent exclusion from a legal *status* in court. If a slave, the whole proceeding against him under this act of Assembly in *Washington* county court, or any other court, is illegal and a nullity. It is a solecism to say, that as a slave, his term of service can be prolonged or extended. The law, in its express terms, and from its professed object can have no reference to a slave. The orphans court of *Washington* county, did not profess to deal with *Patterson* in that character, and the very sentence imposed by them, denies it, by adding to the previous limited term of his servitude.

In any aspect of the case as presented to us, we do not feel at liberty to leave out of it, the prominent fact stated in the petition, that the negro was only bound to serve until January 1844; for, without this fact of limited bondage, the appellee had

no case under the act of Assembly. It does not then comport with that allegation to insist now, that he is a slave, and as such must be turned out of court. The appellee brought him before the court, admitting the expiration of his term of service, but claiming indemnity for the portion of that service lost by his absconding. Upon this allegation, and the traverse of it in his answer, in the orphans court below, he is tried. Before that court, the appellee gave him the standing he now maintains here, and it is no part of our duty to disturb it. From the view before expressed on the first branch of the case, we are not called upon to pronounce upon any other point discussed in the cause. The *forum* selected by the appellee has no jurisdiction in the case, and their decision must be reversed.

JUDGMENT REVERSED.